46 F.3d 1128
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glenda Marie PORTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terri Yvonne MARZE, Defendant-Appellant.
 Nos. 94-5094, 94-5328.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 9, 1994.
Decided Jan. 17, 1995.
 
 Frank Lane Williamson, WOMBLE, CARLYLE, SANDRIDGE & RICE, Charlotte, NC, for Appellant Marze; Armando R. Cobos, Charlotte, NC, for Appellant Porter.
 Harry Thomas Church, Assistant United States Attorney, Charlotte, NC, for Appellee.
 Mark T. Calloway, United States Attorney, Charlotte, NC, for Appellee.
 Before RUSSELL and MOTZ, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Terri Yvonne Marze and Glenda Marie Porter appeal from their convictions and sentences for controlled substances violations. We affirm.
 
 I.
 
 2
 On August 10, 1993, a one-count indictment was returned against appellants Marze and Porter, along with six other co-defendants, in the Western District of North Carolina. All defendants were charged with conspiring with each other, and with others, to possess with intent to distribute, and conspiring to distribute, cocaine. Five codefendants entered guilty pleas.
 
 
 3
 Marze and Porter proceeded to trial, where it was established that from 1986 to 1990 the appellants and others participated in a conspiracy to possess and then distribute cocaine in and around Charlotte, North Carolina. Government witnesses testified that during this time up to fifteen kilograms of cocaine were trafficked through a network organized by Teddy Ray Griffin. At the conclusion of the trial, Marze and Porter were convicted and sentenced to 121 months and 168 months imprisonment, respectively, to be followed in each case by five years supervised release. This appeal followed.
 
 II.
 
 4
 Marze contends that the district court overstated the amount of cocaine attributable to her at sentencing. The standard of proof to be employed at sentencing is a preponderance of the evidence. United States v. Engleman, 916 F.2d 182, 184 (4th Cir.1990). The quantity of drugs involved is a factual issue reviewable only for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990); United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 493 U.S. 1062 (1990).
 
 
 5
 Pursuant to the United States Sentencing Guidelines, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. Sec. 1B1.3, comment (n.2). See also United States v. Irvin, 2 F.3d 72, 75 (4th Cir.1993); United States v. Richardson, 939 F.2d 135, 141 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 599 (1991). The district court here attributed to Marze in excess of five kilograms of cocaine for an offense level of 32. The evidence adduced at trial supports this finding.[1]
 
 
 6
 One witness testified that from mid-1986 to late 1986, with Marze's knowledge, consent, and assistance, three to five kilograms of cocaine were stored at Marze's apartment, which she shared at times with Griffin.[2] A second government witness testified that Marze was present when he purchased one to two kilograms of cocaine from Griffin at Marze's apartment in June, 1986. Another witness testified that Marze was also in the apartment when he purchased cocaine from Griffin at Marze's apartment in 1989. That witness further testified that during his visit he observed another co-defendant processing and packaging one kilogram of cocaine at the apartment. Still another witness testified to purchasing smaller quantities of cocaine directly from Marze on two different occasions in 1988 and 1989. There was also evidence that Marze assisted in cutting, processing, and delivering cocaine on behalf of Griffin on more than one occasion in connection with the conspiracy from 1986 to 1989 and that she often handled large sums of cash proceeds for Griffin during this time.
 
 
 7
 The evidence therefore supports a finding that during the five-year course of this conspiracy, 1986-1990, Marze was directly involved with at least five kilograms of cocaine, or certainly such an amount was reasonably foreseeable to her by virtue of her close association with Griffin. Accordingly, the district court's attribution to Marze of an amount of cocaine in excess of five kilograms was not clearly erroneous.
 
 III.
 
 8
 Porter argues that the district court erred by not striking the testimony of Anthony Eckliff, a government witness who testified about
 
 
 9
 Porter's alleged participation in the conspiracy charged in the indictment, because she contends that notes from a November 15, 1993 interview with Eckliff were not placed in the government's open file prior to trial in violation of Brady v. Maryland, 373 U.S. 83 (1963). Porter asserts that the information contained in the half-page of notes would have revealed Eckliff's role and extent of participation in the alleged conspiracy and that Porter could have "use[d] such information as to the actual involvement of Eckliff in the conspiracy to question other conspiracy participants as to Eckliff's role and actions in the conspiracy that may cast doubt as to the credibility of Eckliff on the witness stand or whether Eckliff in fact was a participant in the conspiracy."
 
 
 10
 Pursuant to Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Id. at 87. The defendant carries the burden of showing that the government withheld the favorable evidence. United States v. Bagley, 473 U.S. 667, 682 (1985); Maynard v. Dixon, 943 F.2d 407, 417 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1211 (1992). "[T]he prosecutor is not required to deliver his entire file to the defense counsel but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." Bagley, 473 U.S. at 675 (footnote omitted). Therefore, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 685. "A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome." Id.; see also United States v. Agurs, 427 U.S. 97, 112 (1976) ("The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed") (footnote omitted). Furthermore, it is clear that " 'nondisclosure of evidence affecting credibility falls within th[e] general rule [of Brady ],' " Bagley, 473 U.S. at 677 (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)), and that material impeachment evidence is similarly that which, "if disclosed and used effectively ... would make the difference between conviction and acquittal." Id . at 676.
 
 
 11
 On these facts, however, Porter's Brady claim must fail. First, Porter has failed to demonstrate that the government withheld any information, favorable or otherwise. At a mid-trial bench hearing, Richard Downs, the Bureau of Alcohol, Tobacco and Firearms agent who interviewed Eckliff, testified on direct examination that he placed the interview notes in the government's open file on November 17 or 18, 1993 and subsequently removed them the week of December 1, immediately prior to trial. On cross-examination, in a somewhat confusing exchange with counsel, Agent Downs indicated that he "placed something" in the government's file the week of December 1. Notwithstanding this apparent confusion, the district court concluded, without further objection, as follows:
 
 
 12
 It's testimony from the government agent that he placed the witness list in the file on November 18.... Defense counsel says that he did not see it in there. The government witness testifies he took it out on December 1, which is two days ago, in connection with this trial. [Defense counsel], all I have is he said he put it in there and you said you didn't see it. We'll have to take the fact that he says it was in there. The fact that you didn't see it is something--it was there. If you didn't see it, I'm sorry. So I'm going to deny your motion.
 
 
 13
 In light of Agent Downs' testimony, we agree with the district court that Porter failed to carry her burden of showing that the government withheld favorable evidence.
 
 
 14
 Second, even assuming the government withheld Agent Downs' notes, Porter fails to show how disclosure of the notes would have materially affected the outcome of the trial. Even if Porter had been able to impeach Eckliff with the information contained in the interview notes, in light of the other testimony presented as to Porter's involvement in the conspiracy there is no reasonable probability that the outcome of the trial would have been different. Several witnesses testified that Porter purchased and sold cocaine for Griffin, that Porter assisted in delivering cocaine, and that Porter purchased and sold at least one to three kilograms of cocaine during the time alleged in the indictment.
 
 
 15
 "[N]ot all evidence favorable to the defendant will create a reasonable doubt." McDowell v. Dixon, 858 F.2d 945, 949 (4th Cir.1988) (citing Agurs, 427 U.S. at 113-14 (withheld evidence "did not contradict any evidence offered by the prosecutor, and was largely cumulative")), cert. denied, 489 U.S. 1033 (1989); see also Epperly v. Booker, 997 F.2d 1, 9-10 (4th Cir.) (withheld evidence "provided a merely cumulative link between [the defendant] and [the victim's] death, rendering any nondisclosure immaterial"), cert. denied, --- U.S. ----, 114 S.Ct. 611 (1993); Maynard, 943 F.2d at 418 (even if withheld nonexculpatory evidence might have prompted the discovery by defense counsel of additional exculpatory evidence, Court held that such evidence would have been cumulative, in that underlying theory had already been put to the jury and been rejected, and thus there was no reasonable probability that verdict would have been different). Even assuming that, contrary to the testimony of Agent Downs, the notes were not in fact present in the government's open file, there is no reasonable probability that the result of the trial would have been different had the interview notes been disclosed to Porter prior to trial. Because Porter's Brady challenge must fail, the district court property admitted Eckliff's testimony.
 
 
 16
 Accordingly, Marze's and Porter's convictions and sentences are
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Marze contends that the district court improperly relied upon the presentence report at sentencing because the probation officer who prepared the report was not present at trial and obtained his information from the United States Attorney's office and the investigating agent's files. The sentencing judge, who also presided at trial, explicitly stated at the sentencing hearing that "due to the testimony that I recall, the evidence was presented that [Marze] was certainly voluntarily a part of the distribution in excess of five kilograms, and I am going to go ahead and determine--go with what the probation officer has to say in the presentence report" (emphasis added). The judge was entitled to rely on his recollection from trial in determining relevant offense conduct. See United States v. Mark, 943 F.2d 444, 450-51 (4th Cir.1991) (district court relied on trial testimony in adopting probation officer's assignment of a base offense level with respect to the amount of cocaine attributable to the defendant at sentencing); United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991) (sentencing judge "may give weight to any reliable source of information")
 
 
 [2]
 Marze also asserts that one witness' testimony that the total amount of cocaine processed at Marze's apartment was "more than a quarter pound," or approximately 113 grams, contradicted evidence that between three and five kilograms of cocaine were stored at her apartment. Even if some contradictions exist, the district court is entitled at sentencing to assess the relative credibility of the witnesses. See 18 U.S.C. Sec. 3742(e) ("[a] court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses"); see also Bowman, 926 F.2d at 381 (sentencing judge properly considered a single witness' uncorroborated testimony in enhancing defendant's sentence)